IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CAROLINE FAULKNER                                                                    PLAINTIFF

V.                                        No. 4:18-cv-31

NORTH LITTLE ROCK SCHOOL DISTRICT                                    DEFENDANT

ORDER

The North Little Rock School District ("NLRSD" or "the district") has moved for summary judgment on Plaintiff Caroline Faulkner's employment discrimination claims against it. (Doc. No. 23). Plaintiff has responded, and NLRSD has filed a reply. For the reasons stated below, the motion for summary judgment is granted.

Undisputed Facts

Plaintiff is an African-American woman who has been employed by NLRSD since 1994, first as a teacher and coach then as an administrator. From the 2003-2004 school year through the 2010-2011 school year, Plaintiff was the assistant principal at NLRSD's East Campus, the ninth-grade campus. She became the principal of Ridgeroad Middle School in the 2011-2012 school year and received a principal's contract and a raise reflecting her promotion. As a principal, her contract was for 252 days and provided for a base salary of $76,383.41 with a stipend of $9,616.32. The following school year, Plaintiff moved back to the lead assistant principal's position for the ninth grade, a position which has a contract duration of 207 days; she remained in that position through the 2017-2018 school year. Although her position had changed, Plaintiff continued to be paid as a principal on a 252-day contract through the 2016-2017 school year.

Plaintiff filed a grievance over her pay on May 17, 2016, in which she contended that

there was a discrepancy in her increment pay and years of experience. Specifically, Plaintiff stated in her grievance that "there was conversation in the district on ways to save money. It was suggested that administrator salaries be reduced by the number of days worked. This prompted me to examine my financial status. In doing so, I found that there was a miscalculation in the number of actual years of experience and/or [service] to the district and my position increment between the Fall of 2012 to Spring 2015." The grievance was denied by the human resource director as "being beyond the scope of her authority,"[1] and Plaintiff appealed to the North Little Rock School District school board (the "school board"). The school board held a hearing on her grievance on October 20, 2016, and the parties reached a settlement in which NLRSD agreed to pay Plaintiff $12,168.93 in back wages retroactive to July 1, 2016. The pay increase that resulted from the school board's decision remained in effect for the 2016-2017 school year. Plaintiff testified that before she filed the grievance, she and NLRSD Superintendent Kelly Rodgers had a decent relationship, but after she filed the grievance he did not speak to her anymore.

A few months later, on February 9, 2017, Rodgers notified Plaintiff by letter that her contract was being partially non-renewed to the extent that he was asking the school board to move Plaintiff from her current 252-day principal's contract (with a salary of $100,356.45) to a 207-day assistant principal's contract (with a salary of $75,295.56). This recommendation applied to all assistant principals who were being paid under a principal's contract. Rodgers stated in an affidavit that prior to sending the partial non-renewal letters, he had gone to an audit seminar and was told that "it was an audit violation for employees to not be correctly placed on and paid according to the salary scale." (Doc. No. 23-2, ¶ 28). Two other assistant principals,

---

[1] Doc. No. 33-2, p. 7

Ricky Jones and Winston Turner, both African-American males, were also partially non-renewed at this time.[2] Previously, the district had allowed employees to keep their higher pay if they took or were moved to another position with lower pay, such as when Plaintiff was moved from the position of principal of Ridgeroad Middle School to that of assistant principal of ninth grade. Plaintiff requested a hearing on her non-renewal recommendation; the school board voted to uphold the decision on April of 2017.

In May of 2017, Plaintiff applied for the position of principal of North Little Rock High School ("NLRHS") following the announcement of Randy Rutherford's pending resignation.[3] She and 47 other applicants were considered for the position.[4] Only Plaintiff and three others—Karla Whisnant (white female), Scott Jennings (white male), and Matt Binford (white male)—were interviewed for the position. Whisnant was then an assistant principal at NLRHS over grades 10-12; Binford was working at the North Little Rock Academy, and Jennings was principal at Beebe High School.

The interview process consisted of each applicant being interviewed by six separate committees: the teacher committee, the classified committee, the student committee, the community member committee, the central office committee, and the principals committee.[5] The committees had established questions that they asked each of the candidates. The applicants

---

[2] Plaintiff has not suggested that this partial non-renewal was directed only at African-American employees or that she was treated differently than any Caucasian assistant principals regarding the partial non-renewal.

[3] Rutherford had been hired in 2014; he was an outside hire. He was selected over an African-American male, Charles Jones, who was then the director of the alternative learning center in the NLRSD. Rodgers recalls that Rutherford was the only candidate that had experience as a high school principal.

[4] Twenty-five of which were new applications and twenty-two that remained active in the system from when the position was posted in 2014.

[5] The committee process was not used when Rutherford was hired.

scored as follows: Whisnant scored highest at 5146.5, followed by Jennings at 5047, Plaintiff at 4206, and Binford at 4132.75. Jennings had been a high school principal at Beebe for six years and had held junior high and middle school principal positions in Cabot for two years prior to that. Plaintiff was the only other interviewed candidate who had experience serving as principal. Superintendent Rogers reported to the school board that Jennings was the best qualified candidate, and the school board accepted the recommendation.

On July 1, 2017, following the selection of Jennings as NLRHS's next principal, Whisnant was hired as the principal of the North Little Rock Center of Excellence (COE), a new charter school in the NLRSD, and her pay was increased according to the salary scale for principals. The position was to have been held by someone else, a white female by the name of Kristine Toland, but she left the NLRSD after she was chosen but before starting the job. Whisnant submitted an application for the position via the district's website on June 19, 2017. Plaintiff did not submit an application, believing that the decision had already been made to hire Kristine Toland, and she contends that the position was not posted on the district's website. In its reply, NLRSD submits the affidavit of Jacob Smith, Executive Director of Human Resources for NLRSD, which establishes that the principal position for the COE was advertised on the district's website beginning on June 19, 2017; a copy of the posting is attached as an exhibit to Smith's affidavit. (Doc. No. 34-1).

Plaintiff filed an EEOC charge alleging race and gender discrimination on October 5, 2017. In it she stated the following: "In May of 2017, I applied for the position of Principal. On June 1, 2017, I was interviewed and learned that I was not selected. . .. I believe that I was not selected for the position because of my race (black) and sex (female) . . .." She checked the

4

boxes indicating that her discrimination was based on race and sex. [6]

Plaintiff filed this action after receiving her right-to-sue letter. She asserts claims of racial discrimination, sex discrimination, and retaliation pursuant to 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964.

## Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex.*, at 327.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir.

---

[6] Defendant mentions in its brief that the discrimination claim regarding the COE position was not part of Plaintiff's EEOC charge but does not argue it as grounds for summary judgment. "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019).

2011) (en banc) (quoting *Fercello v. City of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).

Race and Sex Discrimination

Plaintiff claims race and sex discrimination based on NLRSD's failure to hire her for the position of principal of NLRHS, and she claims race discrimination in its subsequent failure to hire her as principal of the COE. The elements of an equal protection claim alleging discrimination under 42 U.S.C. § 1983 are the same as those of a Title VII claim. *See Richmond v. Board of Regents*, 957 F.2d 595, 598 (8th Cir. 1992). In the absence of direct evidence, which Plaintiff does not argue, the Court must apply the familiar McDonnell Douglas burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). First, Plaintiff must establish a prima facie case of discrimination, which in a failure-to-hire context requires Plaintiff to establish that (1) she is a member of a protected class; (2) she was qualified for the position for which the employer was accepting applications; (3) she was denied the position; and (4) the employer hired someone from outside the protected class. *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Kobrin v. Univ. of Minn.,* 34 F.3d 698, 702 (8th Cir.1994)). If a plaintiff meets this burden, the employer must come forward to rebut the prima facie case by articulating a legitimate, nondiscriminatory reasons for its decision; this burden is not onerous. *Id.* at 975. If the employer presents a nondiscriminatory reason for its decision, the plaintiff has the burden to demonstrate that the proffered reason is pretextual for the true reason for the employment decision. *Id.* at 975–76.

Principal of NLRHS

Regarding the position of principal of NLRHS, the district agrees that Plaintiff has met her burden of establishing a prima facie case of both race and sex discrimination. It offers two non-discriminatory, legitimate reason for its decision to hire Jennings over Plaintiff. First,

Jennings scored higher than Plaintiff in the interviews (5047 vs. 4206).  Second, Jennings had more years of experience as a principal compared to Plaintiff.  These reasons are sufficient to satisfy NLRSD's burden of showing that it had legitimate, nondiscriminatory reasons for not hiring Plaintiff, shifting the burden back to Plaintiff to show that these reasons were pretextual.

A plaintiff may demonstrate that a material question of fact exists regarding pretext by showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or to prove that "a prohibited reason more likely motivated the employer." *Torgerson*, 643 F.3d at 1047.  As always, a plaintiff's burden of establishing pretext "merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination." *Id.,* at 1046 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff does not argue that the reasons given by NLRSD had no basis in fact.  She argues the following as evidence that the district's reason was a pretext to cover sex and race discrimination.  First, the district had a policy of promoting from within which it failed to follow.  "An employer's deviation from its own policies can, in some instances, provide evidence of pretext."  *Russell v. TG Missouri Corp.*, 340 F.3d 735, 746 (8th Cir. 2003).  The parties agree that the district had a promote-from-within policy.  It was not a written policy.  Dorothy Williams, current president of the NLRSD school board and member of the board since 2006, explained her understanding of the policy as follows:  "If you're qualified, that you would be hired, but our first thing is to try and hire internally if possible."  (Doc. No. 23-10, pp. 9-10).  It was not a strict hire-from within policy.  During Rodger's time as superintendent, job openings were typically advertised on the district's website, and both current NLRSD employees and non-employees could apply.  Outgoing principal Rutherford had not been hired from within the district.  The fact that the district did not follow its unwritten policy of promoting from within

when it hired Jennings is not sufficient to establish that Plaintiff was the victim of intentional discrimination.

Second, Plaintiff argues that she was the most-qualified applicant for the position. She had been a NLRSD employee for thirty years. She held a Master of Science degree in Secondary Education. She served as principal of the freshman campus for year, for which she was chosen as principal of the year for the NLRSD. She had thirteen years of experience as an assistant principal and was an exemplary employee with no disciplinary action on her record. Plaintiff also believes that her years in an urban, racially diverse district made her more qualified than Jennings who had no such experience and worked in a smaller, less diverse district. Jennings had Master of Science degree in Educational Leadership. He had twelve years of administrative experience, including having served as the principal of Beebe High School for six years and holding junior and middle school principal positions at Cabot for two years before that. Jennings scored 5047 on the interview questions compared to Plaintiff's score of 4206.

Defendants agree that Plaintiff was qualified to hold the position of principal of NLRHS. However, her qualifications do not make Plaintiff the objectively superior candidate to Jennings. "The mere existence of comparable qualifications between two applicants . . ., alone does not raise an inference of racial discrimination." *Pierce v. Marsh*, 859 F.2d 601, 604 (8th Cir. 1988). Title VII "does not demand that an employer give preferential treatment to minorities or women." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1045 (8th Cir. 2011) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 259 (1981)). The fact that Plaintiff was well qualified and a current employee of the district does not establish that the district discriminated against her because of her race and sex when it hired Jennings, who had six years of experience as a high school principal (compared to her one year as principal of the ninth-grade) and scored

higher than Plaintiff during the interviews. Absent discrimination, employers are free to exercise their judgment in making personnel decisions." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. 2011).

Third, Plaintiff argues that the district has a history of discrimination. She points to the fact that NLRSD was previously a defendant in the Pulaski County desegregation case;[7] this fact, however, does not advance her argument that she was discriminated against because of her sex or race when she was not hired as the NLRSD principal. She also points out that the district has never had a black high school principal and only had one female principal; from this she argues that "statistics often tell much and the Courts listen."[8] Plaintiff has not put enough evidence before the Court from which it can analyze her discrimination claims using statistics. "[T]he use of statistics 'is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn.'" *Coble v. Hot Springs Sch. Dist. No. 6*, 682 F.2d 721, 730 (8th Cir. 1982) (quoting *Eubanks v. Pickens-Bond Construction Co.*, 635 F.2d 1341, 1347 (8th Cir. 1981)).

Fourth, Plaintiff argues that the reasons given by the district for hiring Jennings are pretext because there is evidence that Rodgers had already "preselected" Jennings to become principal. The facts of the present case, however, do not support a preselection argument. In *Coble*, the Eighth Circuit found that the Hot Springs School District engaged in an arbitrary manipulation of job requirements to benefit a pre-selected applicant when it added a requirement that applicants for a school counseling position be certified in French as well as in counseling. The belated addition of the French certification requirement was held to clearly target the one

---

[7] *LRSD v. PCSSD*, Case No. 4:82-cv-866-DPM; NLRSD was declared unitary in 2012 and dismissed from the action.
[8] *Parham v. Sw. Bell Tel. Co.*, 433 F.2d 421, 426 (8th Cir. 1970) (citations omitted).

9

individual who met those requirements, a male, to the exclusion of the female plaintiff.  There is no evidence that the district manipulated any aspect of the job requirements to show preference for Jennings over Plaintiff.  Her reliance on *Coble* to establish proof of discrimination in this case is misplaced.

In further support of her preselection argument, Plaintiff points to the deposition testimony of Dorothy Williams.  Williams testified that although she had expressed her concerns to Rogers about Jennings qualifications since he came from a small, non-diverse school district, Rogers persisted in his recommendation that the position go to Jennings.  She also testified that she was out of town the day the school board voted to fill the position—but there is no evidence that Williams's absence from the vote was in any way caused by the district[9] or any evidence of how she would have voted had she been present at the school board meeting.[10]  Plaintiff also argues that Rogers gave Jennings a tour of the campus in the morning before the committee interviews were held, and she believes this showed partiality because none of the other three candidates were given a tour by Rodgers.  Of the four candidates that were given interviews, Jennings was the only one who had never been to the campus.  Jennings applied via the district's website.  Rogers did not know Jennings prior to the submission of his application, and Jennings did not have any conversations with any representative of NLRSD before he applied for the position.  The evidence does not reflect that Jennings was preselected for the position of principal.

---

[9] Williams testified that at the time of the vote "it was in the summertime, June.  School was out" and she was attending a conference.

[10] When Ms. Williams was asked whether she had ever expressed a concern that the NLRSD has not hired an African American to serve as the principal of a high school, Ms. Williams, who is African American, responded that "whoever applies, and is the most qualified person.  I don't deal with color.  I deal with qualifications, who can do the best job." (Doc. No. 23-10, p. 12).

Finally, Plaintiff argues that the interview process was subjective and cites to several cases for the proposition that reliance on subjective factors should be closely scrutinized.[11] Specifically, Plaintiff challenges that the interview scores favored Whisnant, who had no experience as a principal, over both Jennings and Faulkner who had 8 years and 1 year, respectively. The district, however, did not rely only on the interview scores when it awarded the position to the applicant with the most years of experience in the principal position. Furthermore, Plaintiff has not shown that the questions asked by the six interview committees in any way discriminated against her. Nor has she suggested the racial or sex makeup of the committees was suggestive of discrimination. While the scores of the interview committee was subjective, this is not proof of intentional discrimination against Plaintiff.

Plaintiff has not met her burden of proving that the legitimate, nondiscriminatory reasons given by NLRSD for its decision to hire Jennings as principal of NLRHS over Plaintiff were pretextual, and the district is entitled to summary judgment on this claim.

Principal of the Center of Excellence (COE)

After it had filled the position of principal of NLRHS, the district sought to fill the principal position at the charter school, COE, newly created for the 2017-2018 school year. Plaintiff argues that she was denied the position of principal of the COE because of her race. NLRSD agrees that Plaintiff was qualified for the position but argues that Plaintiff cannot establish a prima facie case of race discrimination because she did not apply for the job.

The record reflects that Kristine Toland, a Caucasian female, had previously been selected for this new position but that she had moved out of the district before the job began. There is no evidence explaining how she was selected, other than that she had worked in the

---

[11] Doc. No. 33, p. 25.

district's central office and was on the team that created the COE.

Following Toland's withdrawal from the position, the CEO principal position was posted on the district's website beginning June 19, 2017.[12] Karla Whisnant applied for the position online on the day it was posted as did Sylvia Grady, an African American female who was currently an Instructional Specialist for the Pine Bluff School District. The record does not reflect any other applicants for this position. The committee approach was not utilized. Rogers recommended that Whisnant, who had scored highest during the interviews for the NLRHS principal position and who was currently assistant principal over grades 10-12 at NLRHS, be hired. The board followed that recommendation.

Plaintiff does not dispute that she did not apply for the position. She testified that she was told that Toland would be the principal and she did not think the position would be posted, so she did not consider applying. Plaintiff argues that Rogers could have recommended her for the position anyway, but instead he again chose to put a Caucasian in the position as he had with Rutherford, Jennings, Whisnant, and Michael Clark (a Caucasian male who was promoted to the principal's position at the NLR middle school in 2018).

In support of her position that she is entitled to relief even though she did not apply for the CEO position, Plaintiff relies on the following language from *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977):

> A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
>
> . . .

---

[12] While Plaintiff stated to her knowledge, the position was not posted, the affidavit from the district's human resource executive director establishes that there is no genuine issue as to this material fact. (Doc. No. 34-1.)

> When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.

*Id,.* at 365–66. *Teamsters* was a class action brought by the United States alleging that the challenged company had "a systemwide pattern or practice of resistance to the full enjoyment of Title VII rights." *Id.,* at 336. The Supreme Court found that the government established "by a preponderance of the evidence that racial discrimination was the company's standard operating procedure the regular rather than the unusual practice." *Id.* The evidence in *Teamsters* showed pervasive statistical disparity in certain positions between minority and non-minority members, and the statistical evidence was bolstered with testimony from individuals recounting over forty instances of discrimination against them. In the situation "where there has been a showing of classwide discriminatory practices coupled with a seniority system that perpetuates the effects of that discrimination," the Court held that "individual nonapplicants must be given the opportunity to undertake their difficult task of proving that they should be treated as applicants and are therefore presumptively entitled to relief accordingly." *Id.*, at 363.

The Eighth Circuit has acknowledged that "[s]ound authority dictates that where a person seeking employment is effectively deterred by the discriminatory policy or conduct of the employer, the complaining party is not required to formally apply for the position in order to seek and obtain relief because of the discrimination." *Banks v. Heun-Norwood*, 566 F.2d 1073, 1076 (8th Cir. 1977) (citing *Teamsters)*. In *Banks*, the female plaintiff called to respond to a job posting for a "young man" to fill an accounting position. She was challenged during the call because she was not a man, but was then asked "well, what are your salary requirements." The district court found that she ultimately didn't pursue the job inquiry because of the salary discussions, not because of the discriminatory policy, and she was not allowed to proceed. The

Eighth Circuit also declined to allow a male nurse to proceed with a discrimination claim when he did not apply for a promotion in the case of *E.E.O.C. v. Audrain Health Care, Inc.*, 756 F.3d 1083 (8th Cir. 2014); the court held that "the EEOC has not presented evidence that [the company] fostered an atmosphere of 'gross and pervasive discrimination' similar to the underlying discrimination at issue in *Teamsters*" such as would excuse the requirement of having applied for the job."

In the case of a non-applicant plaintiff pursuing a discrimination claim, the Eighth Circuit has made clear that "an employee who does not formally apply must make every reasonable attempt to convey his [or her] interest in the job to the employer before he or she may prevail on a discrimination claim." *Audrain Health Care,* at 1087 (internal citations and quotations omitted); *see also Lockridge v. Bd. of Trustees of Univ. of Arkansas*, 315 F.3d 1005, 1011 (8th Cir. 2003).

Plaintiff in this case has not met the difficult burden of proving the futility exception to excuse her from having not applied for the CEO position. In her deposition, Plaintiff stated that she was not interested in the CEO principal position when it first opened as she already understood that Toland was going to be principal. She testified that she didn't see any opening for the position but that she would have been interested in it if she had known about the opening. Plaintiff has not proven that the NLRSD had an atmosphere of "gross and pervasive discrimination," a discriminatory policy, or specific evidence of discriminatory conduct that kept her from applying; rather, it was her lack of knowledge of the posting that actually kept her from applying. Furthermore, there is no evidence that Plaintiff made any effort to convey her interest in the CEO principal position to NLRSD.

Plaintiff also argues that she should be excused from applying for the position under the

exception articulated in *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214 (8th Cir. 1990): "[F]ormal application will not be required to establish a prima facie case if the job opening was not officially posted or advertised *and* either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Id*., at 1217 (emphasis added). While Plaintiff testified that she did not believe the job opening was posted, the evidence submitted with the affidavit of Jacob Smith, NLRSD's executive director of human resources, with a printout of the posting attached as an exhibit establishes there is no genuine issue as to the material fact that the position was in fact posted on the district's website which resulted in two applications being submitted via the website. She cannot avail herself of this exception.

Plaintiff has failed to establish a prima facie case of race discrimination with respect to the position of principal of the COE, and NLRSD's motion for summary judgment is granted on this issue.

## Retaliation

To survive a motion for summary judgment on a retaliation claim, Plaintiff must offer direct evidence of retaliation or create an inference of retaliation under the familiar *McDonnel-Douglas* burden-shifting framework. *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Young–Losee v. Graphic Packaging Int'l, Inc.,* 631 F.3d 909, 912 (8th Cir.2011). In the absence of direct evidence, a plaintiff must establish a prima facie case under the McDonnel Douglas burden-shifting standard. To establish a prima facie case for retaliation, Plaintiff must show "(1) she

engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action." *Shanklin v. Fitzgerald*, 397 F.3d 596, 603 (8th Cir. 2005).

Plaintiff claims that she suffered two instances of retaliation. First, she claims that she was not hired as principal of NLRHS because she had filed the grievance in 2016 over her pay discrepancy. Second, she claims that the district took away the pay increase she received in the settlement of the grievance by subsequently partially non-renewing her contract resulting in a substantial decrease in her salary. She also suggests that her appeal of the decision to partially non-renew her contract also "didn't help" her chances to be selected for the principal's position. These two actions, however, filing a grievance over a pay dispute and appealing a decision to partially non-renew her contract, do not constitute protected activities for purposes of a Title VII.

The term "protected conduct" refers specifically to conduct protected under Title VII. Title 42 U.S.C. § 2000e-3 provides that it shall be an unlawful employment practice for an employer to discriminate against its employees because the employee "has opposed any practice made an unlawful employment practice by this subchapter" or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." The Eighth Circuit recently defined protected activity as "opposition to employment practices prohibited under Title VII." *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1064 (8th Cir. 2020) (citing *Bakhtiari v. Lutz*, 507 F.3d 1132, 11377 (8th Cir. 2007)).

Plaintiff's 2016 grievance over the miscalculation of her years of service and how it related to her pay does not constitute a protected activity under Title VII. Neither does her appeal of the decision to partially non-renew her contact. Neither involved issues of race or sex

16

discrimination. In the absence of proof of protected conduct, Defendant is entitled to summary judgment on the retaliation claim.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 23) is GRANTED.

IT IS SO ORDERED this 14th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE